UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT BECKLEY

ANTHONY BROWN,

      Plaintiff,

v.                                               CIVIL ACTION NO. 5:24-cv-00152

BETSY JIVIDEN,
*individually as a former employee of the West Virginia Division of Corrections and Rehabilitation*, and
MICHAEL FRANCIS,
*individually as a former employee of the West Virginia Division of Corrections and Rehabilitation,* and
LARRY WARDEN,
*individually as a former employee of the West Virginia Division of Corrections and Rehabilitation,* and
JEFF S. SANDY,
*individually as a former employee of the West Virginia Department of Homeland Security,* and
JUSTIN MULLINS,
*individually as an employee of the West Virginia Division of Corrections and Rehabilitation*, and
MICHAEL PACK,
*individually as an employee of the West Virginia Division of Corrections and Rehabilitation,* and
JEREMY RICHMOND,
*individually as an employee of the West Virginia Division of Corrections and Rehabilitation,* and
HAROLD WITHROW,
*individually as an employee of the West Virginia Division of Corrections and Rehabilitation,* and
NICK BURTON,
*individually as an employee of the West Virginia Division of Corrections and Rehabilitation,* and
JOHN/JANE DOE CORRECTIONAL OFFICERS,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending are Motions to Dismiss filed by Defendant Jeff S. Sandy [ECF 28], on May 22, 2024, Defendant Betsy Jividen [ECF 31], on May 23, 2024, Defendants Michael Francis and Larry Warden [ECF 37], on July 22, 2024, and Defendants Justin Mullins, Michael Pack, Jeremy Richmond, Harold Withrow, and Nick Burton ("Officer Defendants") [ECF 81], on September 27, 2024. Plaintiff Anthony Brown responded to each Motion [ECF 33, 34, 51, 83], to which Defendants Sandy, Francis, Warden, and the Officer Defendants filed their respective replies [ECF 35, 58, 84]. Defendant Jividen did not file a reply. The matters are ready for adjudication.

I.

In March 2022, Mr. Brown was an inmate incarcerated at Southern Regional Jail ("SRJ"). [ECF 23 at ¶ 4]. Mr. Brown alleges that while he was asleep in his cell on March 26, 2022, fellow inmates launched a "brutal and coordinated attack" on him. [*Id.* at ¶ 34]. He was "stabbed between 12 and 15 times with shanks." [*Id.*]. The attack "lasted approximately 45 seconds and resulted in more than one dozen puncture wounds to his body." [*Id.* at ¶ 47]. As a result, Mr. Brown "suffered extreme mental and emotional injury and distress in addition to physical pain and suffering and bears permanent scarring." [*Id.* at ¶ 48]. Mr. Brown asserts the attack was possible due to a "defective and unsecured cell door lock," as well as a general lack of supervision and safety checks by prison officials which allowed for freedom of movement by inmates and "availability of homemade weapons." [*Id.* at ¶¶ 37, 41–42].

On March 26, 2024, Mr. Brown instituted this action against several defendants, including Defendant Jividen, the former Commissioner of the West Virginia Division of Corrections and Rehabilitation ("WVDCR"), Defendant Francis, the former Superintendent of the

WVDCR, Defendant Warden, the Commanding Correctional Officer at SRJ, and Defendant Sandy, the former Cabinet Secretary of the West Virginia Department of Homeland Security. [ECF 1]. On May 9, 2024, Mr. Brown filed an Amended Complaint ("Complaint"), adding WVDCR Defendants Justin Mullins, Michael Pack, Jeremy Richmond, Harold Withrow, and Nick Burton, who were all Correctional Officers at SRJ at the time of the alleged attack. [ECF 23]. Mr. Brown alleges the following claims: (1) Count I – "Eighth Amendment Violations under 42 U.S.C. § 1983," (2) Count II – "Conspiracy to Committ [sic] Eighth Amendment Violations under 42 U.S.C. § 1983," (3) Count III – "Failure to Intervene/Bystander Liability under 41 U.S.C. § 1983," (4) Count IV – "Negligence," (5) Count V – "Gross Negligence," (6) Count VI – "Intentional Infliction of Emotional Distress/Tort of Outrage," (7) Count VII – "Common Law Civil Conspiracy," (8) Count VIII[1] – "Negligent Hiring," (9) Count IX[2] – "Negligent Supervision and Training," and (10) Count X – "Negligent Retention." [*Id.* at 10–24].

Defendant Brad Douglas was voluntarily dismissed on May 23, 2024. [ECF 30]. Defendants Sandy, Jividen, Francis, Warden, and the Officer Defendants now move to dismiss the Complaint pursuant to *Federal Rule of Civil Procedure* 12(b)(6). [ECF 28, 31, 37, 81].

II.

*Federal Rule of Civil Procedure* 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Rule 12(b)(6) correspondingly permits a defendant to challenge

---

[1] This claim is erroneously referred to as the second of two Count VIIs in the Amended Complaint. [ECF 23 at 19]. All future references to this claim will be listed as Count VIII.

[2] This claim is erroneously referred to as the first of two Count Xs in the Amended Complaint. [ECF 23 at 21]. All future references to this claim will be listed as Count IX.

a complaint when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted); *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). Additionally, the showing of an "entitlement to relief" amounts to "more than labels and conclusions." *Twombly*, 550 U.S. at 555. It is now settled that "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *McCleary-Evans*, 780 F.3d at 585; *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020), *cert. denied*, 209 L. Ed. 2d 122, 141 S. Ct. 1376 (2021); *Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008).

The complaint need not "forecast evidence sufficient to prove the elements of [a] claim," but it must "allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Robertson v. Sea Pines Real Est. Cos.*, 679 F.3d 278, 291 (4th Cir. 2012)) (internal quotation marks omitted). Stated another way, the operative pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting the opening pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). In sum, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Robertson*, 679 F.3d at 288.

The decision in *Iqbal* provides some additional markers concerning the plausibility requirement:

4

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief. . . .'"
>
> Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 678–79 (citations omitted).

As noted in *Iqbal*, the Supreme Court has consistently interpreted the Rule 12(b)(6) standard to require a court to "accept as true all of the factual allegations contained in the complaint." *Erickson*, 551 U.S. at 94 (citing *Twombly*, 550 U.S. at 555–56); *see also S.C. Dep't of Health & Env't Control v. Com. & Indus. Ins. Co.*, 372 F.3d 245, 255 (4th Cir. 2004) (citing *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002)). The court is required to "draw[] all reasonable . . . inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

### III.

*A. Eighth Amendment Violations*

Mr. Brown asserts several claims pursuant to 42 U.S.C. § 1983 against the moving

Defendants, including (1) Eighth Amendment Violations (Count I), (2) Conspiracy to Commit Eighth Amendment Violations (Count II), and (3) Failure to Intervene/Bystander Liability (only as to the Officer Defendants) (Count III). [ECF 23 at 13–14, 19–21].

"The Eighth Amendment, which is applicable to the States through the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments.'" *Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017) (quoting U.S. Const. amend. VIII); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994). This proscription accords inmates the right to receive adequate protection. *Helling v. McKinney*, 509 U.S. 25, 33–35 (1993); *Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *King v. Riley*, 76 F.4th 259, 264 (4th Cir. 2023). An Eighth Amendment claim is subject to the deliberate indifference standard, which encompasses an objective and subjective component. *Farmer*, 511 U.S. at 834; *King*, 76 F.4th at 264; *Kingsley*, 877 F.3d at 543 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The objective prong requires the inmate to demonstrate a 'substantial risk of serious harm.'" *King*, 76 F.4th at 264 (quoting *Farmer*, 511 U.S. at 834); *see also Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016). The subjective prong requires the prison official to "actually know of and disregard an objectively serious condition, medical need, or risk of harm." *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997); *see also Pfaller v. Amonette*, 55 F.4th 436, 445 (4th Cir. 2022); *Scinto*, 841 F.3d at 225.

**1. Failure to Protect**

It is well established that the Eighth Amendment's prohibition on "cruel and unusual punishments" also imposes certain duties upon prison officials, including taking "reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832; *see also Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 97 (4th Cir. 2017); *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016). "Specifically, corrections officers have a duty to protect prisoners

from violence at the hands of other prisoners, for being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Raynor*, 817 F.3d at 127 (cleaned up); *see also Farmer*, 511 U.S. at 833 ("[G]ratuitously allowing the beating . . . of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency.") (cleaned up); *Thompson*, 878 F.3d at 110 ("[C]ontrolling authority clearly establishes an inmate's right to reasonable protection from malicious assault.").

Mr. Brown's allegations suffice to show a risk of harm, but not a "substantial risk" of "serious harm." While the Complaint alleges Mr. Brown's housing section reported "doors not securing properly, door bolts missing, shards of mirrors missing, and bolts missing from other items contained therein," these defects and security issues "have arisen over five to ten years or even longer." [ECF 23 at ¶¶ 51, 55]. Despite the considerable amount of time that has passed, the Complaint fails to provide any reference to prior incidents of inmate-on-inmate assault or other safety-related incidents demonstrating a significant risk of harm. Without any specific allegations attesting to the prevalence of inmate-on-inmate threats, however, or alternatively, a level of prevalence of such threats or attacks during the relevant time period, the necessary "substantial" risk of harm appears lacking. Mr. Brown only at the most general level alleges knowledge of "significant inmate-on-inmate violence and invasion of inmate cells." [*Id.* at ¶ 94]. Without more, the objective prong is inadequately pled.

For similar reasons, the Complaint falls short of alleging facts sufficient to plead the subjective component of deliberate indifference. As noted, the subjective component requires *each* Defendant actually knew the risk of harm. *Short v. Hartman*, 87 F.4th 593, 612 (4th Cir. 2023); *King*, 76 F.4th at 264. Again, the Complaint alleges knowledge of only the very general risks and unsafe conditions at the facility by emphasizing the "Defendants'" putative awareness of

defective cell door locks, the availability of homemade weapons, and inadequate supervision. The Complaint, however, lacks specific factual allegations providing *each* Defendant fair notice as to his or her particular unconstitutional act(s) vis-à-vis these three risk categories that would give rise to a plausible showing on the subjective component. *See Langford v. Joyner*, 62 F.4th 122, 125 (4th Cir. 2023). Indeed, the only state-of-mind allegations follow:

> 60. All Defendants were aware prior to March 26, 2022, of the safety concerns raised herein and the unconstitutionally unsafe and unsecure circumstances at SRJ, including but not limited to the door locking mechanisms, defective cell doors, defective locks, freedom of inmate travel within pods at nighttime, availability of homemade weapons, and, in fact, cell invasions and inmate-on-inmate violence occurring at night in particular due to these unconstitutionally insecure and unsafe conditions.
>
> . . .
>
> 64. All Defendants were both objectively and subjectively aware of the risk of serious harm posed by ignoring or otherwise failing to make necessary inspections and repairs to cell locking mechanisms, enforce nighttime lockdown, provide sufficient staffing, conduct welfare check rounds, and act to eliminate the presence of weapons in inmate pods.
>
> …
>
> 69. Defendant supervisors had actual or constructive knowledge that their subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury and the Defendant supervisors' response to said knowledge was so inadequate as to show deliberate indifference or tacit authorization of these constitutional injuries.

[ECF 23 at ¶¶ 60, 64, 69].

These are conclusory allegations condemned by *Twombly* and its progeny. They lack sufficiently focused and detailed allegations that the Defendants knew of and condoned the alleged safety issues, including any failure by correctional officers to limit inmate movement or availability of homemade weapons. The sole paragraph attributing a specific action even concedes Defendant Francis -- the former Superintendent at SRJ responsible for safe "administration,

operation, and control of SRJ" -- repeatedly attempted to secure funding for repairs at SRJ but that his requests "went unfulfilled." [ECF 23 at ¶¶ 11, 54]. The fact the attack occurred or that funding requests went unfulfilled, without more, is insufficient to plead a claim under the subjective prong of the Eighth Amendment for failure to protect. *See Hixson v. Moran*, 1 F.4th 297, 303 (4th Cir. 2021) (noting the binding precedent that mere negligence is insufficient to meet the deliberate indifference standard).

### 2. Conspiracy to Commit Eighth Amendment Violations

To establish a civil conspiracy under § 1983, a plaintiff "must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the] deprivation of a constitutional right [of the plaintiff]." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996); *see also Williams v. Mitchell*, 122 F.4th 85, 91 (4th Cir. 2024). "[A] conclusory allegation of agreement at some unidentified point does not supply facts adequate to show" the existence of an unlawful conspiracy. *Barrett v. Pae Gov't Servs., Inc.*, 975 F.3d 416, 434 (4th Cir. 2020) (internal quotation marks and citations omitted).

Mr. Brown insufficiently alleges Defendants acted in concert to violate his Eighth Amendment rights. The Complaint does not disclose any communication between Defendants or others that might give rise to an inference of an agreement to commit any acts, wrongful, or otherwise. Nor does the Complaint give rise to an inference that the alleged conspirators shared the same conspiratorial objective. Mr. Brown merely alleges "Defendants implicitly agreed that they would fail to implement reasonably [sic] safety measures necessary to protect Anthony Brown from violence from other inmates." [ECF 23 at ¶ 79]. That conclusory allegation, without more, is insufficient to state a conspiracy claim under § 1983.

### 3. Failure to Intervene

Count III, alleged only against the Officer Defendants, asserts a claim of "Bystander Liability" pursuant to 42 U.S.C. § 1983. [ECF 23 at ¶¶ 89–101]. The Officer Defendants contend dismissal is proper inasmuch as the allegations asserted are not individualized. [ECF 82 at 14].

Generally, "a law officer may incur § 1983 liability only through affirmative misconduct." *Randall v. Prince George's Cnty.*, 302 F.3d 188, 202 (4th Cir. 2002). However, our Court of Appeals has recognized liability when a plaintiff demonstrates that a "bystanding" officer "(1) knows that a fellow officer is violating an individual's constitutional rights, (2) has a reasonable opportunity to prevent the harm, and (3) chooses not to act." *Id.* at 204 (footnote omitted); *see also Quinn v. Zerkle*, 111 F.4th 281, 295 (4th Cir. 2024); *Brooks v. Johnson*, 924 F.3d 104, 110 (4th Cir. 2019).

Mr. Brown's allegations fall short of giving rise even to a reasonable inference any of the Officer Defendants personally participated or acquiesced in the events that allegedly deprived him of his constitutional rights. *See Langford*, 62 F.4th at 125 ("requiring specific factual allegations for each defendant gives fair notice to that defendant of the plaintiff's claim and the underlying factual support."). Rather, Mr. Brown's only assertions against the Officer Defendants appear in his broad allegations pertaining to *all* Officer Defendants. This is insufficient to attach personal liability. In any event, the Complaint is devoid of any showing that the Officer Defendants knew a fellow officer was violating Mr. Brown's constitutional rights and failed to exercise a reasonable opportunity to intervene. The only "specific" factual allegations are as follows:

> 44. John and Jane Doe Correctional Officers had failed to keep a proper supervision on cell door security and inmate traffic within Pod B4 and/or had failed to appropriately respond to unsecured cell door locks and inmate traffic leading up to the 4:14 AM assault on Anthony Brown.

> . . .
>
> 93. The conditions of cell door locking failures, failure to make welfare check rounds, and permitting the existence of homemade weapons long pre-existed the assault on Anthony Brown.
>
> 94. This assault was far from an isolated event, as the Defendants were aware of significant inmate-on-inmate violence and invasion of inmate cells caused in whole or in part by the conditions complained of herein, all of which resulted in a lack of safety and security for Anthony Brown.

[ECF 23 at ¶¶ 44, 93–94].

These allegations are also insufficiently focused and detailed vis-a-vis what the Officer Defendants knew of and condoned respecting the alleged safety issues, including any failures by correctional officers to make welfare checks, surface homemade weapons, control inmate-on-inmate violence, or other indicators that might indicate at least circumstantial knowledge of the danger to Mr. Brown. The fact the attack occurred, without more, is insufficient to state an Eighth Amendment claim for failure to intervene.

Accordingly, the Court **GRANTS** the Motions to Dismiss and Counts I through III are **DISMISSED** without prejudice to repleading in accordance with the *Federal Rules of Civil Procedure*.

### B. State Law Negligence Claims

Moving Defendants seek dismissal of Mr. Brown's claims for negligence (Count IV), gross negligence (Count V), negligent hiring (Count VIII), negligent supervision and training (Count IX), and negligent retention (Count X) based on (1) insufficiency, and (2) qualified immunity.

Under West Virginia law, a public officer acting within the scope of employment is immune from suit for actions for actions taken in any discretionary function. *W. Va. Reg'l Jail*

*& Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 505, 766 S.E.2d 751, 764 (2014). West Virginia treats the general functions of state correctional officers, along with the broader duties of employee training, supervision, and retention, as discretionary. *Id.* at 509, 766 S.E.2d at 768 ("[W]e find that D.H.'s general functions as a correctional officer, like most law enforcement officers, are broadly characterized as discretionary, requiring the use of his discretionary judgments and decisions."). However, immunity does not attach to discretionary actions or omissions if made "in violation of a clearly established statutory or constitutional rights or laws of which a reasonable person would have known, or [which] are otherwise fraudulent, malicious, or oppressive." *Id.* at 507, 766 S.E.2d at 766.

In its recent decision in *West Virginia Dep't of Hum. Servs. v. David B., Next Friend of J.B.*, the Supreme Court of Appeals summarized the governing standards for the West Virginia variety of qualified immunity:

> West Virginia applies two standards to determine if a state agency, agent, official, or employee is protected by qualified immunity. First, "[a] litigant may pierce the shield of qualified immunity by showing that a government official has violated a clearly established statutory or constitutional right." Second, a litigant may pierce the shield of qualified immunity by showing that the government official's, employee's, or agent's acts or omissions were *fraudulent, malicious, or oppressive*. The first test is based upon federal law, while the second is in addition to the federal law-based test.

No. 23-275, 2024 WL 4784904, at *5 (W. Va. Nov. 14, 2024) (emphasis added) (cleaned up); *see also Maston v. Wagner*, 236 W. Va. 488, 781 S.E.2d 936, 940 (2015); Syl. Pt. 5, in part, *W. Va. Div. of Nat. Res. v. Dawson*, 242 W. Va. 176, 190, 832 S.E.2d 102, 116 (2019); Syl., in part, *State v. Chase Sec., Inc.*, 188 W. Va. 356, 424 S.E.2d 591 (1992).

In view of the pleading deficiencies earlier mentioned, Mr. Brown has not presently shown that particular Defendants violated a clearly established statutory or constitutional right. In any event, the moving Defendants rely principally upon the second prong earlier quoted. The

question is thus whether Mr. Brown has pled any acts or omissions by the subject Defendants that were fraudulent, malicious, or oppressive. He has utterly failed to do so. Defendants are thus entitled -- at least on the pleading as presently constructed -- to qualified immunity for the acts and omissions related to Mr. Brown's negligence claims. *See W. Va. Dep't of Hum. Servs. v. A.R.*, 249 W. Va. 590, 600, 900 S.E.2d 16, 26 (2024) (finding plaintiff's general allegation of defendant's failure to follow policies and protocols warranted dismissal for qualified immunity purposes inasmuch as it failed to show Defendant "did or failed to do something that it would have reasonably understood to be unlawful."). Inasmuch as qualified immunity applies to the negligence claims, the Court need not address the sufficiency of the pleading as to those claims. The Court would note, however, the claims appear largely unsupported by necessary factual allegations.

The Court **GRANTS** the Motions to Dismiss and Counts IV, V, VIII, IX, and X are **DISMISSED** without prejudice to repleading in accordance with the *Federal Rules of Civil Procedure*.

### C. Intentional Infliction of Emotional Distress/Tort of Outrage

Count VI alleges Defendants Francis, Warden, and the Officer Defendants intentionally inflicted emotional distress upon Mr. Brown. [ECF 23 at ¶¶ 114–20]. Moving Defendants seek dismissal based on Mr. Brown's insufficient allegations. [ECF 38 at 16–17; ECF 82 at 15–16].

To state a claim for intentional infliction of emotional distress, a plaintiff must allege the following:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and (4)

> that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Travis v. Alcon Labs., Inc.*, 202 W. Va. 369, 375, 504 S.E.2d 419, 425 (1998); *Goodwin v. City of Shepherdstown*, 241 W. Va. 416, 424, 825 S.E.2d 363, 371 (2019). The Amended Complaint is devoid of the factual underpinnings to support Mr. Brown's claim against Defendants Francis, Warden, and the Officer Defendants. Mr. Brown makes no mention of any specific conduct by these Defendants and, again, the allegations are precisely "the type of 'unadorned, the-defendant-unlawfully-harmed-me accusation[s]' and 'legal conclusions' that are insufficient to survive a Rule 12(b)(6) motion to dismiss." *See Iqbal*, 556 U.S. at 678.

Accordingly, the Court **GRANTS** the Motions to Dismiss and Count VI is **DISMISSED** without prejudice to repleading in accordance with the *Federal Rules of Civil Procedure*.

### D. Common Law Civil Conspiracy

Count VII charges the moving Defendants with common law civil conspiracy. [ECF 23 at ¶¶ 121–28]. Moving Defendants seek dismissal based on Mr. Brown's insufficient allegations. [ECF 29 at 8–9; ECF 32 at 10–11; ECF 38 at 8–9; ECF 82 at 14–15].

Under West Virginia law, "[a] civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means." Syl. Pt. 8, *Dunn v. Rockwell*, 225 W. Va. 43, 47, 689 S.E.2d 255, 259 (2009). Given that "[t]he cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff," *id.*, "[a] civil conspiracy is not a *per se*, stand-alone cause of action," Syl. Pt. 9, *id.* Rather, it is "a legal doctrine under which liability for a tort may be imposed on people who did not actually commit a tort themselves but

who shared a common plan for its commission with the actual perpetrator(s)." *Id.*

Again, Mr. Brown fails to ascribe to any of the Defendants the necessary actions or agreement(s) that would result in a plausible claim. He contends the moving Defendants were aware of the conditions inside the facility and concludes that "Defendants all made a conscious, willful, and malicious decision conspiring to perpetuate and even cover up these conditions." [ECF 23 at ¶ 125]. At a minimum, he fails to describe how the moving Defendants did so. And that alone, without more, is a fatal pleading defect.

Accordingly, the Court **GRANTS** the Motions to Dismiss and Count VII is **DISMISSED** without prejudice to repleading in accordance with the *Federal Rules of Civil Procedure.*

### IV.

Based upon the foregoing discussion, the Court **GRANTS** the Motions to Dismiss [**ECF 28, 31, 37, 81**] and **DISMISSES WITHOUT PREJUDICE** all claims.[3] Mr. Brown may replead the dismissed claims on or before April 15, 2025.

The Clerk is **DIRECTED** to transmit a copy of this written opinion and order to all counsel of record and to any unrepresented party.

ENTER:   March 31, 2025



Frank W. Volk
Chief United States District Judge

---

[3] Defendants Francis and Warden also move for dismissal on the grounds Mr. Brown failed to exhaust administrative remedies prior to filing suit. [ECF 38 at 9–11]. Mr. Brown contends that he was "not required to demonstrate exhaustion of administrative remedies in his Amended Complaint" inasmuch as it is an affirmative defense. [ECF 51 at 11]. Inasmuch as all claims against Defendants Francis and Warden are dismissed for failure to state a claim upon which relief can be granted, the Court need not address this ground for dismissal.