UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

ANTHONY BROWN,

        Plaintiff,

v.                                         CIVIL ACTION NO.  5:24-cv-00152

JEREMY RICHMOND,
*individually as an employee of the West Virginia*
*Division of Corrections and Rehabilitation* and
TROY CARTER,
*individually as a former employee of the West Virginia*
*Division of Corrections and Rehabilitation* and
AARON WILLIAMS,
*individually as an employee of the West Virginia*
*Division of Corrections and Rehabilitation,*

        Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

        Pending are Motions for Summary Judgment by Defendant Troy Carter [ECF 200], filed November 20, 2025, as well as by Defendant Aaron Williams [ECF 202] and Defendant Jeremy Richmond [ECF 204], both filed November 21, 2025. Plaintiff Anthony Brown ("Plaintiff") responded to each motion [ECF 209–211], to which Defendants Carter, Williams, and Richmond filed their respective replies [ECF 215; ECF 214; ECF 216]. Also pending is Plaintiff Anthony Brown's Motion for Partial Summary Judgment [ECF 206], filed November 21, 2025. Defendants Carter, Williams, and Richmond responded in opposition [ECF 208; ECF 212; ECF 213], to which Plaintiff did not reply. Also pending are additional motions identified and adjudicated at the conclusion. The matters are ready for adjudication.

## I.

### A.    *Underlying Facts*

On March 26, 2022, Mr. Brown was an inmate incarcerated at Southern Regional Jail ("SRJ"). [ECF 158 ¶ 16]. Mr. Brown alleges fellow inmates launched an attack on him while he was asleep in his cell. [*Id.* ¶ 17]. He was "stabbed between 12 and 15 times" with homemade weapons. [*Id.*]. As a result, Mr. Brown "suffered actual physical injury, extreme mental and emotional injury and distress, physical pain and suffering, and bears permanent scarring . . . ." [*Id.* ¶ 37]. Mr. Brown asserts the attack was possible due to "inmates not being secured for nightly lockdown in violation of SRJ policy/operating procedure, the failure to maintain adequate supervision and . . . safety checks," and the defective cell door lock mechanism. [*Id.* ¶¶ 17–18].

On March 26, 2024, Mr. Brown instituted this action against several defendants, including Defendant Betsy Jividen, the former Commissioner of the West Virginia Division of Corrections and Rehabilitation ("WVDCR"), Defendant Michael Francis, the former Superintendent of the WVDCR, Defendant Larry Warden, the Commanding Correctional Officer at SRJ, and Defendant Jeff Sandy, the former Cabinet Secretary of the West Virginia Department of Homeland Security. [ECF 1]. On May 9, 2024, Mr. Brown filed an Amended Complaint, adding WVDCR Defendants Justin Mullins, Michael Pack, Jeremy Richmond, Harold Withrow, and Nick Burton, who were all Correctional Officers at SRJ at the time of the alleged attack. [ECF 23].

On March 31, 2025, the Court dismissed Mr. Brown's Amended Complaint and provided him leave to replead. [ECF 155]. On April 16, 2025, Mr. Brown filed a Second Amended Complaint ("Complaint") against Defendants Francis and Richmond and against Defendants Troy Carter and Aaron Williams, who were Correctional Officers at SRJ at the time of the alleged attack.

[ECF 158]. Defendant Michael Francis was voluntarily dismissed on May 15, 2025. [ECF 164].[1]

Mr. Brown alleges the following claims against remaining Defendants Carter, Williams, and Richmond: (1) Count I – "Eighth and Fourteenth Amendment Violations under 42 U.S.C. § 1983," (2) Count II – "Conspiracy to Commit Eighth and Fourteenth Amendment Violations under 42 U.S.C. § 1983," (3) Count III – "Failure to Intervene/Bystander Liability under 41 U.S.C. § 1983," (4) Count IV – "Negligence," (5) Count V – "Gross Negligence," (6) Count VI – "Intentional Infliction of Emotional Distress/Tort of Outrage," (7) Count VII – "Common Law Civil Conspiracy." [*Id.* ¶¶ 41–108].

Defendants Carter, Williams, and Richmond each moved to dismiss the Complaint, [*see* ECF 169; ECF 167; ECF 165], contending: (1) the action is either barred by res judicata or should be enjoined based upon the release of claims in the *Rose* Settlement Agreement, [ECF 170 at 6–7; ECF 168 at 19–20; ECF 166 at 18–19], (2) the claims are barred by the applicable statute of limitations, [ECF 170 at 3–6; ECF 168 at 4–11; ECF 166 at 6–8], (3) Plaintiff failed to exhaust administrative remedies, [ECF 170 at 6–7; ECF 166 at 11], (3) the officers are entitled to qualified immunity, [ECF 168 at 12–14; ECF 166 at 15–18], and (4) the Complaint fails to state a claim pursuant to *Federal Rule of Civil Procedure* 12(b)(6). [ECF 170 at 7–11; ECF 168 at 12–19; ECF 166 at 10–15].

Before the Court's resolution of the motions to dismiss, Defendants Carter, Williams, and Richmond filed the subject motions for summary judgment reasserting the arguments from their respective motions to dismiss in support of summary judgment. [*See* ECF 201; ECF 203; ECF 205]. Plaintiff contends he is entitled to partial summary judgment with

---

[1] In accordance with the Stipulation of Partial Dismissal as to Defendant Francis, the Motion to Dismiss [**ECF 161**] is **DENIED as moot**.

respect to his § 1983 claims (Counts I, II and III) as well as his state law negligence and common law civil conspiracy claims (Counts IV and VII) based principally upon an affidavit by Defendant Carter, which was previously filed in *Rose et al. v. Sandy et al.* -- a class action challenging the conditions of confinement at SRJ. [ECF 206-2 (Troy Carter Affidavit); *Rose et al. v. Sandy et al.*, Civ. Action No. 22-cv-405, ECF 1308-2 (same)].

## B.    *Rose Settlement*[2]

On September 21, 2022, former inmates and/or pre-trial detainees at SRJ instituted an action on behalf of themselves and other similarly situated individuals challenging the conditions of confinement at SRJ. *See Rose et al. v. Sandy et al.*, Civ. Action No. 22-cv-405, ECF 1 (Complaint); ECF 7 (First Amended Complaint); ECF 433 (Second Amended Complaint). In relevant part, Plaintiffs in *Rose* alleged the following claims: Count I – Eighth Amendment Violations (Conditions of Confinement); Count III – Conspiracy to Commit Eighth Amendment Violations; Count IV – Fourteenth Amendment Violations (Conditions of Confinement); Count VI – Conspiracy to Commit Fourteenth Amendment Violations; Count VII – Failure to Intervene/Bystander Liability; Count VIII – Negligence; Count IX – Gross Negligence; Count XI – Intentional Infliction of Emotional Distress ("IIED"); and Count XII – Common Law Civil Conspiracy. *See Rose et al. v. Sandy et al.*, Civ. Action No. 22-cv-405, ECF 433. The relevant

---

[2] The Court "may properly take judicial notice of matters of public record." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) (citing Fed. R. Evid. 201(b)) (stating, in relevant part, that a "court may judicially notice a fact that is not subject to reasonable dispute because it" "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *McNulty v. Casero*, 479 F. Supp. 3d 200, 224 n.4 (D. Md. 2020) ("At the summary judgment stage, the Court may consider matters over which it may take judicial notice.") (citation omitted); *see also Colonial Penn. Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("The most frequent use of judicial notice . . . is in noticing the content of court records.") (citation omitted and internal quotation marks omitted). As a matter of public record, the Court takes judicial notice of *Rose et al. v. Sandy et al.*, Civ. Action No. 22-cv-405.

claims were based upon, *inter alia*, harm to inmates as a result of the "[l]ack of [p]risoner [s]afety" caused by (1) being "forced to live and sleep unprotected on the dayroom floor," (2) "broken cell doors," (3) the failure to implement lockdown procedure at night, (4) faulty or nonfunctioning "call boxes" in inmate cells, and (5) faulty or nonfunctioning "buttons and intercoms on the communication board/panel in correctional officer 'tower[s].'" *Id.*, ECF 433 at 30–31.

On December 8, 2023, the "Settling Parties," including named plaintiffs "individually and on behalf of a putative class of others similarly situated" and "Settling Defendants" "Jeff S. Sandy, individually and in his official capacity as the former Cabinet Secretary of the West Virginia Department of Homeland Security, William K. Marshall III, individually and in his official capacity as the Commissioner of the [WVDCR], Betsy Jividen, Brad Douglas, and Michael Francis," filed a Joint Motion for Preliminary Approval. *Id.*, ECF 849; 849-1 at 8. The Joint Motion for Preliminary Approval also included the Settlement Agreement and Release, the Claim Form, the Email Notice, and the Long Form Notice to be sent to potential class members. *Id.*, ECF 849; ECF 849-2 (Claim Form); ECF 849-3 (Email Notice); ECF 849-4 (Draft Long Form Notice). [ECF 216-1 (Final Long Form Notice)]. The Settlement Agreement and Release defined "Claim Form" as "the form a Class Member must validly and timely submit to receive a Settlement Payment under this Agreement." *Id.*, ECF 849-1 at 4; *see also id.*, ECF 1059-1 at 4. "Email Notice" was defined as "the Class Notice summarizing the proposed Settlement terms as agreed upon by Settling Parties and approved by the Court, to be provided to Class Members via electronic mail." *Id.*, ECF 849-1 at 5–6; *see also id.*, ECF 1059-1 at 5–6. "Long Form Notice" was defined as "the Class Notice of the proposed Settlement terms, as agreed upon by Settling Parties and approved by the Court, that the Claims Administrator is to provide to Class Members under this Settlement Agreement on the Settlement Website." *Id.*, ECF 849-1 at 6; *see*

*also id.*, ECF 1059-1 at 6. [*See* ECF 216-1].

On July 19, 2024, the Court entered a Preliminary Approval Order certifying a settlement class under Rule 23(a) and (b)(1)(B). *See Rose et al. v. Sandy et al.*, Civ. Action No. 22-cv-405, ECF 936 at 5. In its order of preliminary approval, the Court preliminarily approved the Settlement as fair, reasonable, and adequate under Rule 23(e). *See id.*, ECF 936 at 2–4. The Court further approved the form, manner, and content of the class notice. *See id.*, ECF 936 at 10–11. The Court concluded the method of providing class notice constituted sufficient notice to the class and that the class notice and notice plan satisfied the requirements of due process and Rule 23. *See id.*, ECF 936 at 10 ("The Notice Plan is reasonably calculated under the circumstances to apprise the Class of the pendency of the Class Action, the terms of the Settlement Agreement, Class Counsels' request for an award of attorneys' fees and costs and request for incentive awards for Class Representatives, and their rights to object to the Settlement."). The Court directed the parties to notify class members (1) of the settlement, (2) of the procedure and requirements for objection, and (3) of the date of a hearing to determine the fairness, reasonableness, and adequacy of the settlement. *See id.*, ECF 936 at 10–12.

On September 24, 2024, the parties submitted a Joint Motion for Final Approval and the final Settlement Agreement And Release. *See id.*, ECF 1059; ECF 1059-1. After the objection deadline passed, the court conducted the fairness hearing on October 25, 2024. *See id.*, ECF 1141. On December 5, 2024, the Court entered the Final Approval Order approving the settlement, incorporating "the release set forth in the Settlement Agreement," and enjoining class members from pursuing "Released Claims" against the "Released Parties." *See Rose et al. v. Sandy et al.*, Civ. Action No. 22-cv-405, ECF 1202. The Settlement Agreement and Release defined "Released Parties" as "Settling Defendants, together with the State of West Virginia, the West

Virginia Department of Homeland Security, the West Virginia Division of Corrections, and each

of their respective affiliates, agents, employees, *officers*, directors, parents, subsidiaries, attorneys,

representatives, advisors, administrators, predecessors, successors, insurers, accountants, advisors,

or anyone acting on their behalf." *Id.*, ECF 1059-1 at 8 (emphasis added). "Released Claims" was

defined as:

> the claims against Settling Defendants that Plaintiffs and Class Members shall
> release. This includes all damages arising out of continuous or repeated exposure
> to substantially the same general conditions at Southern Regional Jail between
> September 22, 2020, and [October 25, 2024,] the date of the Final Settlement
> Hearing . . . . This includes any action, cause of action, claim, demand, right suit,
> obligation, agreements, promises, liabilities, damages (including punitive or any
> other form of exemplary damages), charges, fines, penalties, losses, costs,
> expenses, and attorneys' fees, asserted, or which could have been asserted in the
> class action complaint. Released Claims does not include occurrences or claims
> which are unknown or could not have been asserted in the class action complaint[.]

*Id.*, ECF 1059-1at 7.

## II.

*Federal Rule of Civil Procedure* 56 provides that summary judgment is proper

where "the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the nonmoving

party to show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby,

Inc.*, 477 U.S. 242, 246 (1986). "The nonmoving party must do so by offering 'sufficient proof in

the form of admissible evidence' rather than relying solely on the allegations of her pleadings."

*Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016) (quoting *Mitchell v.

Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993)). The Court must "view the evidence in the

light most favorable to the [nonmoving] party." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (internal

quotation marks and citation omitted); *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651,

659 (4th Cir. 2018).

When faced with cross-motions for summary judgment, the Court applies the above standard and must consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks omitted). "The court . . . cannot weigh the evidence or make credibility determinations." *Jacobs v. N.C. Admin. Off. of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *see Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017).

## III.

### A.    *Res Judicata*

Defendants contend Mr. Brown's claims are barred by res judicata because (1) the settlement in *Rose et al. v. Sandy et al.*, Civil Action No. 22-cv-405, ECF 1059-1; ECF 1202 at 10, is a previous final judgment on the merits, (2) the claims in the instant action are based upon the same claims alleged in *Rose* inasmuch as Mr. Brown's allegations likewise stem from harm as a result of the lack of prisoner safety caused by faulty cell doors, locks, and call buttons, and (3) there is an identity of parties in the two actions inasmuch as Mr. Brown was a class member in *Rose*. [*See* ECF 201 at 8–9; ECF 203 at 10–11; ECF 205 at 10–12].

Mr. Brown first responds the instant case should not be precluded because "it would be unacceptable to require an inmate to elect between joining an ongoing class suit and thereby forfeiting his right to seek individual damages, on the one hand, and removing himself from the class (. . . risking exclusion from any equitable relief granted) in order to preserve the possibility of bringing a subsequent damage action, on the other." [ECF 209 at 6–7 (citing *Crowder v. Lash*, 687 F.2d 996, 1008 (7th Cir. 1982); ECF 210 at 6–7 (citing *Crowder*, 687 F.2d at 1008); ECF 211 at 7–8 (citing *Crowder*, 687 F.2d at 1008)]. Second, Mr. Brown responds his individual damages action is not precluded by participation in a class action where the class notice in *Rose* failed to

provide notice that he was required to adjudicate his damage claims as part of the prior class action suit. [ECF 209 at 6 (citing *Wright v. Collins*, 766 F.2d 841, 847 (4th Cir. 1985); ECF 210 at 7 (citing *Wright*, 766 F.2d at 847); ECF 211 at 7 (citing *Wright*, 766 F.2d at 847)].

Defendants maintain (1) the class notice in *Rose* was sufficient to advise Mr. Brown of the impact of the settlement, [ECF 215 at 7; ECF 214 at 8; ECF 216 at 8–10], and (2) Mr. Brown acknowledged his receipt of the class notice in *Rose* and submitted a claim form. [ECF 215 at 7 ("Plaintiff's own testimony in this case confirms that he received formal notice of the class settlement, submitted his claim form, and is litigating his claim through the administration process" in *Rose*.); ECF 214 at 8 ("Plaintiff *in fact* is litigating his claim through the class administration process in *Rose*—potentially subjecting him to double recovery."); ECF 216 at 9 (citing ECF 204-3 at 44) (noting that Mr. Brown "confirmed he received formal notice of the class settlement and submitted his claim form" in his deposition testimony)].

"The doctrine of *res judicata* precludes the assertion of a claim when a judgment on the merits in a prior suit bars further claims by parties or their privies based on the same cause of action.'" *Brooks v. Arlington Hosp. Ass'n*, 850 F.2d 191, 195 (4th Cir. 1988) (cleaned up). "Under the doctrine of *res judicata*, or claim preclusion, 'a final judgment on the merits of an action precludes the parties or their privies from relitigating . . . [what was] or could have been raised in that action.'" *Providence Hall Assocs. Ltd. P'ship v. Wells Fargo Bank, N.A.*, 816 F.3d 273, 276 (4th Cir. 2016) (cleaned up) (quoting *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981))). Res judicata bars claims that "existed at the time of the first suit and 'might have been offered' in the same cause of action. . . . " *Aliff v. Joy Mfg. Co.*, 914 F.2d 39, 43–44 (4th Cir.1990).

For *res judicata* to apply, there must be: "'(1) a final judgment on the merits in a

prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." *Providence Hall Assocs. Ltd. P'ship,* 816 F.3d at 276 (quoting *Pueschel*, 369 F.3d at 354–55); *see also Duckett v. Fuller*, 819 F.3d 740, 744 (4th Cir. 2016). "Along with these 'three formal elements' of res judicata, 'two practical considerations should be taken into account,'" including (1) "whether the party or its privy knew or should have known of its claims at the time of the first action," and (2) "whether the court that ruled in the first suit was an effective forum to litigate the relevant claims." *Providence Hall Assocs. Ltd. P'ship,* 816 F.3d at 276 (citing *Grausz v. Englander*, 321 F.3d 467, 473–74 (4th Cir. 2003)).

"The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) (quoting *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507–508 (2001)). By "precluding parties from contesting matters that they have had a full and fair opportunity to litigate," the doctrine of res judicata minimizes "the expense and vexation attending multiple lawsuits, conserve[s] judicial resources, and foster[s] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Sturgell*, 553 U.S. at 892 (internal quotations omitted).

### 1. Elements of Res Judicata

#### a. Final Judgment on the Merits

The first prong is satisfied inasmuch as the Court's Final Approval Order in *Rose* was a final judgment on the merits. *See Rose et al. v. Sandy et al.*, Civ. Action No. 22-cv-405, ECF 1202. The Court approved the settlement agreement, incorporated the settlement agreement's release enjoining the class members from pursuing related claims against certain released parties, reserved "the Court's jurisdiction . . . for the purpose of enforcing and administering" the settlement agreement, and directed that the judgment "be deemed final pursuant to Rule 54(b) of

the Federal Rules of Civil Procedure." *Id.*, ECF 1202 at 9–11. *See In re MI Windows & Doors, Inc., Prods. Liab. Litig.*, 860 F.3d 218, 224 (4th Cir. 2017) (citing *Young-Henderson v. Spartanburg Area Mental Health Ctr.*, 945 F.2d 770, 773 (4th Cir. 1991)) ("[F]inal consent orders incorporating parties' settlement agreements are judgments 'on the merits' for purposes of *res judicata*."). A factual adjudication regarding the merits of the claims alleged did not occur in *Rose*. Neither was it required for the judgment to have a preclusive effect. *See e.g.*, *id.*; *Orca Yachts, L.L.C. v. Mollicam, Inc.*, 287 F.3d 316, 319 (4th Cir. 2002) (concluding adjudications based on default judgment and dismissals for failure to prosecute pursuant to Rule 41 have a claim preclusive effect on subsequent litigation).

### b. Identity of Claims

"Claims arise out of the same cause of action when they 'arise out of the same transaction or series of transactions . . . or the same core of operative facts.'" *Schwartz v. J.J.F. Mgmt. Servs., Inc.*, 922 F.3d 558, 566–67 (4th Cir. 2019) (quoting *First Union Commercial Corp. v. Nelson, Mullins, Riley and Scarborough* (*In re Varat Enters.*), 81 F.3d 1310, 1315–1316 (4th Cir. 1996)). "Put simply, the suits are identical where the claims asserted in both actions are based upon the same set of facts such that, ordinarily, one would expect them to be litigated simultaneously." *Id.*

The second prong of res judicata is also satisfied inasmuch as the claims alleged in *Rose* and the claims alleged by Mr. Brown "'arise out of the same . . . series of transactions . . . or the same core of operative facts.'" *Schwartz*, 922 F.3d at 566–67 (quoting *In re Varat Enters.*, 81 F.3d at 1315–16). The claims alleged in *Rose* were Eighth Amendment and Fourteenth Amendment violations based upon the conditions of confinement within SRJ, conspiracy to commit Eighth and Fourteenth Amendment violations, failure to intervene/bystander liability,

negligence, gross negligence, intentional infliction of emotional distress ("IIED"), and common law civil conspiracy. *See Rose et al. v. Sandy et al.*, Civ. Action No. 22-cv-405, ECF 433. The relevant claims in *Rose* were based upon, *inter alia*, harm to inmates as a result of the "[l]ack of [p]risoner [s]afety" caused by (1) being "forced to live and sleep unprotected on the dayroom floor," (2) "broken cell doors," (3) the failure to implement lockdown procedure at night, (4) faulty or nonfunctioning "call boxes" in inmate cells, and (5) faulty or nonfunctioning "buttons and intercoms on the communication board/panel in correctional officer 'tower[s].'" *Id.*, ECF 433 at 30–31. Mr. Brown alleges precisely the same claims based upon the same factual predicate. [*See* ECF 158 ¶¶ 41–108 (alleging the following claims: (1) Count I – "Eighth and Fourteenth Amendment Violations under 42 U.S.C. § 1983," (2) Count II – "Conspiracy to Commit Eighth and Fourteenth Amendment Violations under 42 U.S.C. § 1983," (3) Count III – "Failure to Intervene/Bystander Liability under 41 U.S.C. § 1983," (4) Count IV – "Negligence," (5) Count V – "Gross Negligence," (6) Count VI – "Intentional Infliction of Emotional Distress/Tort of Outrage," (7) Count VII – "Common Law Civil Conspiracy")]. Mr. Brown's claims arise from an attack by other inmates made possible due to "inmates not being secured for nightly lockdown in violation of SRJ policy/operating procedure, the failure to maintain adequate supervision and . . . safety checks," and defective cell door lock mechanisms. [*Id.* ¶¶ 17–28, 30, 36, 38–40 (describing the lack of safety to Mr. Brown caused by broken cell doors, failure to follow lockdown procedure, and faulty or nonfunctioning equipment in inmate cells and officer towers)]. It is plain that Mr. Brown's claims arise from the same core of operative facts as the claims in *Rose*.

Additionally, Mr. Brown was (1) part of the *Rose* class when the underlying events occurred on March 26, 2022, inasmuch as he was "incarcerated at [SRJ] for a period greater than two (2) days" during the class period, which was from September 22, 2020, to December 5, 2024,

*see Rose et al. v. Sandy et al.*, Civ. Action No. 22-cv-405, ECF 1059-1 at 5, and (2) Mr. Brown acknowledged in his deposition testimony that he received and submitted a claim form in order to receive a settlement payment. [*See* ECF 204-3 at 44 (Q. "Have you received notice of a lawsuit . . . filed against [SRJ]?" A. "Yeah. I received one in the mail to fill out." Q. "Okay. Did you fill that out?" A. "Yes, Ma'am.")]. That Mr. Brown is a class member and has participated in *Rose* further supports that his claims are "based upon the same set of facts such that, ordinarily, one would expect them to be litigated simultaneously." *Schwartz*, 922 F.3d at 566–67. Accordingly, there is an identity of the causes of action.

### c. Identity of Parties or their Privies

"[T]he privity requirement assumes that the person in privity is so identified in interest with a party to former litigation that he represents *precisely the same legal right* in respect to the subject matter involved." *Andrews v. Daw*, 201 F.3d 521, 525 (4th Cir. 2000). "[P]rivity attaches only to those parties whose interests in a given lawsuit are deemed to be 'aligned.'" *Jones v. S.E.C.*, 115 F.3d 1173, 1181 (4th Cir. 1997) (quoting *Comite de Apoyo a los Trabajadores Agricolas v. U.S. Dep't. of Labor,* 995 F.2d 510, 514 (4th Cir. 1993)). Nevertheless, "a nonparty may be bound by a judgment when the nonparty was adequately represented in the action by a party with the same interests, such as in 'properly conducted class actions, and suits brought by trustees, guardians, and other fiduciaries.'" *Duckett*, 819 F.3d at 745 (quoting *Sturgell*, 553 U.S. at 894). The Supreme Court of the United States has established the minimum elements of adequate representation as follows: (1) aligned interests between "the nonparty and [his] representative," (2) "either the party understood [their] . . . representative capacity or the original court took care to protect the interests of the nonparty," and (3) "sometimes . . . notice of the original suit to the persons alleged to have been represented." *Sturgell*, 553 U.S. at 900.

13

The third prong of res judicata is satisfied inasmuch as (1) Mr. Brown was adequately represented by the class representatives in *Rose*, and (2) Defendants Carter, Williams, and Richmond are in privity with the unnamed correctional officers and the Settling Defendants in *Rose*. *Rose et al. v. Sandy et al.*, Civ. Action No. 22-cv-405, ECF 1202.

Mr. Brown was adequately represented by the class representatives in *Rose* inasmuch as their interests were aligned, the class representatives were understood to be acting in a representative capacity, and the Court protected the interests of the class members by requiring notice to be distributed. *See Duckett*, 819 F.3d at 745 (quoting *Sturgell*, 553 U.S. at 894); *see also Sturgell*, 553 U.S. at 900.

In *Rose*, numerous additional defendants were named, including a number of officials responsible for the administration, operation, and control of the WVDCR; medical care contractors and their employees; as well as "current and former correctional officers employed by the WVDCR who worked, or are still working, at SRJ." *See Rose et al. v. Sandy et al.*, Civ. Action No. 22-cv-405, ECF 433. However, the Settling Defendants included "Jeff S. Sandy, individually and in his official capacity as the former Cabinet Secretary of the West Virginia Department of Homeland Security, William K. Marshall III, individually and in his official capacity as the Commissioner of the WVDCR, [and] Betsy Jividen, Brad Douglas, and Michael Francis[, in their individual capacities]." *Id.*, ECF 1059-1 at 8. Many of the Settling Defendants in *Rose* or their successors were also named in this case in their individual capacities before they were dismissed, including Jeff S. Sandy, Betsy Jividen, Brad Douglas, and Michael Francis. [*See generally* ECF 1 (Complaint); ECF 23 (First Amended Complaint); ECF 158 (Second Amended Complaint)]. Defendants Carter, Williams, and Richmond -- correctional officers employed by the WVDCR -- are the only defendants remaining. [*See* ECF 158].

First, Defendants Carter, Williams, and Richmond represent "*precisely the same legal right*" as the unnamed correctional officers in *Rose*. Further, the same is true of Defendants Carter, Williams, and Richmond and the Settling Defendants in *Rose*. Their interests are "'aligned,'" *Jones*, 115 F.3d at 1181 (quoting *Comite de Apoyo a los Trabajadores Agricolas*, 995 F.2d at 514), inasmuch as the Settling Defendants in *Rose* settled on behalf of themselves and the unnamed correctional officers to ensure "Released Parties" included "Settling Defendants together with . . . the [WVDOC], and . . . agents, employees, [and] officers" of the WVDOC. *See Rose et al. v. Sandy et al.*, Civ. Action No. 22-cv-405, ECF 1059-1; *see also Riggleman v. Clarke*, No. 7:22-CV-00018, 2023 WL 2505490, at *8 (W.D. Va. Mar. 14, 2023), *aff'd sub nom. Riggleman v. Dotson*, No. 24-6995, 2025 WL 1111473 (4th Cir. Apr. 15, 2025) (concluding "prison employees generally are in privity with other prison employees") (collecting cases); *Timpson v. Pondexter*, No. 517CV00760PMDKDW, 2017 WL 6280871, at *3 (D.S.C. Nov. 15, 2017), *report and recommendation adopted*, No. CV 5:17-0760-PMD, 2017 WL 6270604 (D.S.C. Dec. 7, 2017) (barring a subsequent suit on the basis of res judicata after concluding correctional officers sued in the subsequent suit were in privity with the department of corrections in the prior suit inasmuch as the department of corrections "clearly represented" the interests of the correctional officers); *Benbow v. Wall*, No. CA 13-757 S, 2014 WL 652354, at *6 (D.R.I. Feb. 19, 2014) (dismissing a prisoner's second suit based on res judicata despite the addition of a new correctional officer defendant who was employed by same agency as original defendants); *Cruz Berrios v. Gonzalez–Rosario*, 630 F.3d 7, 14 (1st Cir. 2010) (quoting *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402–03 (1940) ("'There is privity between officers of the same government so that a judgment in a suit between a party and a representative of [a governmental entity] is res judicata in relitigation of the same issue between that party and another officer of the government.'").

Second, the rule of differing capacities does not alter this outcome inasmuch as each *Rose* defendant sued in their official capacity was also sued in their individual capacity as well. *See Daw*, 201 F.3d at 525 ("[A] government official in his official capacity does not represent 'precisely the same legal right' as he does in his individual capacity[.]"); *Brooks v. Arthur*, 626 F.3d 194, 201 (4th Cir. 2010) ("The rule of differing capacities is generally understood to mean that defendants in their official and individual capacities are not in privity with one another for the purposes of res judicata."). Therefore, Defendants Carter, Williams, and Richmond are in privity with the unnamed correctional officers and the Settling Defendants in *Rose*. Accordingly, there is an identity of parties or their privities.

### d. *Grausz Factors*

Finally, there are two additional "'practical considerations'" that have been highlighted by our Court of Appeals as a means to determine the appropriateness of the application of res judicata. *See Grausz*, 321 F.3d at 473–74; *Providence Hall Assocs. Ltd. P'ship*, 816 F.3d at 282. Although the present case does not arise subsequent to a bankruptcy proceeding as in *Grausz* and *Providence Hall Assocs. Ltd. P'ship*, the Court nonetheless considers the additional *Grausz* factors. Specifically, the Court considers (1) "whether the court that ruled in the first suit was an effective forum to litigate the relevant claims," and (2) "whether the party or its privity should have known of its claims at the time of the first action." *Providence Hall Assocs. Ltd. P'ship*, 816 F.3d at 282 (citing *Grausz*, 321 F.3d at 473–74).

First, there is no reason to believe that this Court in *Rose* was an ineffective forum to litigate the claims. Second, Mr. Brown was aware of his present claims at the time of the first action inasmuch his claims arose on March 26, 2022, nearly six months before *Rose* was filed on September 21, 2022. *See Rose et al. v. Sandy et al.*, Civ. Action No. 22-cv-405, ECF 1; *see also*

*Providence Hall Assocs. Ltd. P'ship*, 816 F.3d at 283 (concluding that the inquiry focuses on the conduct of the plaintiff in the second action or on the conduct of the privities in the first action because to "conclude[] otherwise, . . . would effectively alter the third res judicata prong to require a strict identity of parties rather than an identity of the parties *or their privies*"). Moreover, the class representatives were well aware of the claims in the first action inasmuch as the purpose of a class representative is to represent unnamed class members' claims and interests on their behalf. Thus, the class representatives represented precisely the same legal rights as the class members, including Mr. Brown. For his part, Mr. Brown offers no argument regarding why the class representatives could not effectively litigate in the *Rose* litigation. In light of the foregoing, the *Grausz* factors are satisfied.

### 2. Additional Equitable Considerations

Although all elements of res judicata and the additional practical considerations are satisfied, Mr. Brown nonetheless advances two arguments against the application of res judicata. First, relying on out-of-circuit authority, *Crowder v. Lash*, 687 F.2d 996, 1008 (7th Cir. 1982), Mr. Brown responds the instant case should not be precluded because "it would be unacceptable to require an inmate to elect between joining an ongoing class suit . . . thereby forfeiting his right to seek individual damages, on the one hand, and removing himself from the class (. . . risking exclusion from any equitable relief granted) in order to preserve the possibility of bringing a subsequent damage action, on the other." [ECF 209 at 7 (citing *Crowder*, 687 F.2d at 1008); ECF 210 at 7 (citing *Crowder*, 687 F.2d at 1008); ECF 211 at 7–8 (citing *Crowder*, 687 F.2d at 1008)].

In *Crowder*, an inmate sued Indiana prison officials for individual monetary damages based upon alleged violations of his constitutional rights pursuant to 42 U.S.C. § 1983. *Crowder*, 687 F.2d at 1008. The inmate had previously participated in class action litigation

17

regarding the Indiana prison's violations of the Eighth Amendment's prohibition on cruel and unusual punishment that sought only declaratory and injunctive relief -- as opposed to monetary damages. *Id.* Defendants sought to preclude the inmate's subsequent suit seeking monetary damages based upon res judicata. The United States Court of Appeals for the Seventh Circuit declined to resolve the res judicata argument because defendants "did not properly raise their res judicata defense in the lower court." *Id.* Nevertheless, the Seventh Circuit observed that "[e]ven if res judicata were properly before [the court], . . . [it] would reject defendant's broad argument[s]" in favor of the doctrine's application. *Id.* The Seventh Circuit reasoned it would be "a harsh and improper application of res judicata to hold, on the basis of the notice sent out in a previous class action suit[,] that prisoners forfeited their rights to personal redress for lack of knowledge that federal law . . . required that injunctive and monetary relief be sought in one action." *Id.* (internal brackets and quotation marks omitted). Therefore, the Court observed that "before a class member may be barred from pursuing an individual claim for damages, he must have been notified that he was required to adjudicate his damage claims as part of a prior class action suit." *Id.*

The Court is not persuaded by the out-of-circuit dictum. The reasoning contained within *Crowder* is inapposite inasmuch as the *Rose* litigation sought declaratory, injunctive, and monetary relief. Mr. Brown, therefore, could not have been faced with the situation envisioned in *Crowder* that required the inmate to choose between joining the class action and forfeiting his right to individual damages or removing himself from the class and risking exclusion from any equitable relief granted. *See id.* at 1009 ("[W]e find it unacceptable . . . to require an inmate to elect between joining an ongoing class suit . . .  thereby forfeiting his right to seek individual damages, on the one hand, and removing himself from the class (. . . risking exclusion from any equitable relief granted) in order to preserve the possibility of bringing a subsequent damage action, on the

other.").

Second, relying on *Wright v. Collins*, 766 F.2d 841, 847 (4th Cir. 1985), Mr. Brown urges that his individual damages action is not precluded by his participation in the class action where the class notice in *Rose* failed to provide notice that he was required to adjudicate his damage claims as part of the prior class action suit. [ECF 209 at 6 (citing *Wright*, 766 F.2d at 847); ECF 210 at 7 (citing *Wright*, 766 F.2d at 847); ECF 211 at 7 (citing *Wright*, 766 F.2d at 847)].

In *Wright*, defendants sought application of res judicata where an inmate at a Maryland facility sued prison officials for monetary damages for violating his constitutional rights despite the existence of class action litigation challenging the constitutionality of prison conditions at the same Maryland facility. Relying on the previously highlighted dictum in *Crowder*, our Court of Appeals concluded application of res judicata was inappropriate because "'before a class member may be barred from pursuing an individual claim for damages, he must have been notified that he was required to adjudicate his damage claims as part of a prior class action suit.'" *Wright*, 766 F.2d at 847 (quoting *Crowder*, 687 F.2d at 1008). Our Court of Appeals reasoned that the general class notice sent in the class action litigation would not bar Wright's individual action for monetary damages for the personal harm he suffered because the general notice merely "inform[ed] class members of the existence of the litigation and the questions raised by it." *Id.* at 848. Our Court of Appeals further reasoned the notice failed to (1) notify class members of the effect of class membership on an inmate's rights or (2) specify the forms of relief sought in the class action. *Id.*

Unlike in *Wright*, the Email Notice and Long Form Notice approved by the Court in *Rose* explained the effect of class membership on an inmate's rights in plain terms. The Email Notice was emailed "to each Class Member for whom Defendants ha[d] an email address" while

19

the Long Form Notice, [ECF 216-1], was posted on the settlement website and also mailed to class members through U.S. mail, along with a claim form and a reply envelope. *See Rose et al. v. Sandy et al.*, Civ. Action No. 22-cv-405, ECF 1059-1 at 5–6, 9; ECF 849-3 (Email Notice); ECF 849-4 (Long Form Notice). The Email Notice stated, *inter alia*, "[t]his is a limited fund settlement which means you will not be able to sue the Settling Defendants on your own for matters covered by the settlement, because there would not be enough funds available to litigate those claims," *id.*, ECF 849-3, whereas the Long Form Notice stated, *inter alia*, (1) "[y]our legal rights are affected even if you do nothing," and (2) "[t]his is a limited fund settlement which means you will not be able to sue the Settling Defendants *and other Released Parties . . .* on your own for matters covered by the settlement, because there would not be enough funds available to litigate those claims." [ECF 216-1 at 1, 3 (emphasis added)]. The Long Form Notice further specified the capacities in which the Settling Defendants were sued. [*See* ECF 216-1 at 1].

The notices in *Rose* did not specify the forms of relief sought in the class action -- that is, whether the action sought merely injunctive and declaratory relief or whether it also sought monetary relief. *See Wright*, 766 F.2d at 848. However, the notice did much more than the notice in *Wright* because it notified class members of more than the mere existence of the litigation and the questions raised by it. At minimum, the notice (1) identified the capacities in which the Settling Defendants were sued, (2) made clear that the action sought monetary relief, (3) explained the class representatives' role was to "sue on behalf of themselves and other people who have similar claims," and, critically, (4) provided clear, intelligible notice that participation in the class would extinguish personal damages claims for individualized harm inasmuch as the notices notified class members as follows: "[y]our legal rights are affected even if you do nothing" and the nature of the settlement as a limited fund settlement, "mean[ing] *you will not be able to sue the Settling*

*Defendants and other Released Parties . . . on your own* for matters covered by the settlement, because there would not be enough funds available to litigate those claims." [ECF 216-1 (emphasis added)]; *see also Rose et al. v. Sandy et al.*, Civ. Action No. 22-cv-405, ECF 849-3 (Email Notice); ECF 849-4 (Long Form Notice) (containing section titled "Impact on Ability to Sue Settling Defendants – Release of Claims"). Nonetheless, the lack of literal specificity regarding the type of relief sought within the notices makes no difference inasmuch as the *Rose* litigation sought declaratory, injunctive, and monetary relief. Therefore, as previously acknowledged, Mr. Brown simply could not have been faced with the unsatisfactory situation that notice regarding the type of relief would have been intended to avoid. Therefore, *Wright* likewise does not bar the application of res judicata since Mr. Brown was "notified that participation in the class action would preclude a subsequent individual damage action." *Wright*, 766 F.2d at 848.

Thus, inasmuch as all elements of res judicata are satisfied and the additional equitable arguments advanced by Mr. Brown have no merit, res judicata bars Mr. Brown from asserting his claims.

One might still wonder -- despite the foregoing -- whether the application of res judicata is nonetheless inappropriate. Take the following argument as a justification against its application: "Yes, broken doors were alleged in *Rose* -- but Mr. Brown's claim is not 'conditions are bad,' it is Defendants failed to protect him from a known, immediate risk, and, as a result, he was stabbed 12–15 times."

But res judicata is a "practical doctrine[ ]" that considers "whether the part[ies or their privies have] previously had a fair shot with respect to the claims raised in the present action." *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 378 (4th Cir. 2017) (citation and internal quotation marks omitted). Importantly, res judicata serves "crucial functions in our legal system."

21

*Id*. It operates to "preclude . . . matters that . . . [have been] full[y] and fair[ly] . . . litigate[d]," thereby minimizing "the expense and vexation [of] attending multiple lawsuits, conserv[ing] judicial resources, and foster[ing] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Sturgell*, 553 U.S. at 892 (internal quotations omitted).

Mr. Brown's claim arose on March 26, 2022 -- nearly six months before *Rose* was filed on September 21, 2022. Moreover, Mr. Brown was a class member in *Rose*. Therefore, his claim "existed at the time of the first suit and 'might have been offered' in the same cause of action. . . . " *Aliff*, 914 F.2d at 43–44; *see also Providence Hall Assocs. Ltd. P'ship*, 816 F.3d at 276 (cleaned up) (quoting *Pueschel*, 369 F.3d at 354 (quoting *Moitie*, 452 U.S. at 398)) ("'[A] final judgment on the merits of an action precludes the parties or their privies from relitigating . . . [what was] or could have been raised in that action.'"). As a consequence, res judicata bars Mr. Brown's claims.

Accordingly, inasmuch as Defendants are entitled to judgment as a matter of law based upon the application of res judicata, the Court **GRANTS** the motions for summary judgment filed by Defendant Carter, [**ECF 200**], Defendant Williams, [**ECF 202**], and Defendant Richmond, [**ECF 204**].

**B.    *Released Claims in Rose***

Defendants further maintain that Mr. Brown's claims should be enjoined as "Released Claims" pursuant to the *Rose* Settlement Agreement and Release inasmuch as the release protects Defendants as "Released Parties" -- i.e., correctional officers who were employed by the WVDCR between September 22, 2020, and October 25, 2024. [ECF 201 at 8 ("The Settlement Agreement adopted by the Court protects Defendant Carter, as a former employee of the WVDCR[.]"); ECF 203 at 10–11 ("[Mr. Brown's] claims arising out of 'substantially the same

general conditions' as those alleged in *Rose* were released . . . and enjoined by this Court's final order."); ECF 205 at 11 ("[Defendant] Richmond qualifies as a 'Released Part[y]' under the *Rose* Settlement Agreement adopted by the Court and [he] is therefore protected from the instant claims.")].

"Releases, of course, are a standard feature of class action settlements. Indeed, the release of claims that form the basis of litigation is the raison d'être of any settlement." *Berry v. Schulman*, 807 F.3d 600, 616 (4th Cir. 2015). "In class action settlements, parties may release not only the very claims raised in their cases, but also claims arising out of the 'identical factual predicate.'" *Id.* (quoting *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 248 (2d Cir. 2011)). Where district courts have reserved jurisdiction for the purpose of enforcing and administering a settlement agreement, the court may enjoin future actions brought in contravention of such a release. *See In re MI Windows & Doors, Inc., Prods. Liab. Litig.*, 860 F.3d at 220 (affirming a district court's decision to grant a motion to enforce the class action settlement and enjoin a suit made by a class member subsequent to a class action settlement); *id.* at 225 (first citing *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355, 367–68 (3rd Cir. 2001); then citing *TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982); and then citing *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1332, 1335 (5th Cir. 1981)) ("In reaching this conclusion, we join several other courts of appeals that have approved similar injunctions."); *see also Wudi Indus. (Shanghai) Co. v. Wong*, 143 F.4th 250, 258 (4th Cir. 2025) ("[W]hen a district court has entered an order that retains jurisdiction to enforce a settlement, that order is sufficient to grant the court jurisdiction to enforce the settlement agreement.") (cleaned up).

The Court incorporated the release of claims within the Settlement Agreement and

Release into the Final Approval Order. *See Rose et al. v. Sandy et al.*, Civ. Action No. 22-cv-405, ECF 849-1; ECF 1059-1; ECF 1202 at 10. The Court further "adjudge[d] that Settling Defendants and Released Parties are released from any and all liability as to the 'Released Claims,' and that any and all such 'Released Claims' filed by or on behalf of any Class Member(s) in any forum against Released Parties are or shall be enjoined to the extent they assert 'Released Claims' under this Settlement Agreement, subject to performance by Settling Defendants [of] their obligations under this Settlement Agreement." *See Rose et al. v. Sandy et al.*, Civ. Action No. 22-cv-405, ECF 1202 at 10. The Final Approval Order further, "[p]ermanently enjoin[ed] Class Members from prosecuting, commencing[,] or continuing any and all 'Released Claims' which they had or have, against the Released Parties in any forum, including but not limited to the Class Action." *Id.*, ECF 1202 at 10. Finally, the Court reserved jurisdiction over "any attempt[] by any person to assert any claims barred under this Agreement," "all Parties for the purpose of enforcing and administering this Settlement Agreement," and "any other necessary purpose." *Id.*, ECF 1202 at 10–11.

"Released Claims" include "the claims against Settling Defendants that Plaintiffs and Class Members shall release," including "all damages arising out of continuous or repeated exposure to substantially the same general conditions at [SRJ] between September 22, 2020, and [October 25, 2024,] the date of the Final Settlement Hearing[.]" *See Rose et al. v. Sandy et al.*, Civ. Action No. 22-cv-405, ECF 1059-1 at 7. The release applies to "any action, cause of action, [or] claim, . . . [ ] including punitive or any other form of exemplary damages[ ], . . . which could have been asserted in the class action complaint. [But] . . . does not include occurrences or claims which are unknown or could not have been asserted in the class action complaint[.]" *Id.*, ECF 1059-1 at 7. Moreover, "Released Parties" includes WVDOC correctional officers. *Id.*, ECF 1059-1 at 8.

Consequently, in the alternative, even if application of res judicata was

inappropriate, Mr. Brown's claims are nevertheless "Released Claims" pursuant to the Settlement Agreement and Release as well as the Court's Final Approval Order. *See id.*, ECF 1059-1; ECF 1202; *see also Wong*, 143 F.4th at 258. Accordingly, inasmuch as Defendants are entitled to judgment as a matter of law based on Mr. Brown being enjoined from bringing his claims, the Court **GRANTS** the motions for summary judgment filed by Defendant Carter, [**ECF 200**], Defendant Williams, [**ECF 202**], and Defendant Richmond, [**ECF 204**].

### C.      *Potential Conflicts*

On April 16, 2025, Mr. Brown filed a second amended complaint naming Defendant Carter. [ECF 158]. Thereafter, on May 12, 2025, Stephen P. New, Emilee B. Wooldridge, and the law firm Stephen New and Associates filed a Notice of Withdrawal as Counsel based upon a "non-waivable conflict of interest" as a result of Defendant Carter being named in the second amended complaint. [*Id.*]. Defendants Williams and Carter have expressed concerns regarding former counsel Stephen P. New's "potential conflict." [ECF 203 at 9 n.8 (citing ECF 202-10) (noting Defendant Carter was not named in the First Amended Complaint but "[i]t was later disclosed that Plaintiff's counsel Stephen P. New and Associates previously represented [Defendant] Carter" in another proceeding); ECF 215 at 6 n.2 ("[Mr. Brown] frequently refers to an Affidavit of Troy Carter that was authored and signed while [Defendant] Carter was represented by Stephen P. New and Associates as a witness for conditions at SRJ in [*Rose et al. v. Sandy et al.*]. Mr. New, who filed [*Rose*] along with [Mr. Brown's] current counsel, withdrew after [Defendant] Carter was named in the Second Amended Complaint. However[,] his co-counsel in the Rose matter, who now bring suit against [Defendant] Carter, remain."); *see also* ECF 221; ECF 222; ECF 224].

Of further concern to the Court are potential conflict issues as a result of *Rose* class counsel's concurrent representation of an absent class member as an individual client. In *Rose*, on July 19, 2024, and December 5, 2024, respectively, the Court preliminarily and finally appointed the following counsel and firms as class counsel for settlement purposes: Stephen P. New and Emilee B. Wooldridge and the law firm of Stephen New & Associates, Amanda J. Taylor and the law firm of Taylor, Hinkle & Taylor, Timothy P. Lupardus and the Lupardus Law Office, Robert Dunlap and Robert P. Dunlap and Associates PLLC, and Zachary Kyle Whitten and Whitten Law Office. *See Rose et al. v. Sandy et al.*, Civ. Action No. 22-cv-405, ECF 936 at 6–9 (Preliminary Approval Order); 1202 at 6–9 (Final Approval Order). Nevertheless, before counsel were either preliminarily or finally appointed as class counsel, Stephen P. New and Emilee B. Wooldridge and the law firm of Stephen New & Associates, Timothy P. Lupardus and the Lupardus Law Office, and Zachary Kyle Whitten and Whitten Law Office already represented Mr. Brown inasmuch as the Complaint in the instant case was filed March 26, 2024. [ECF 1].

Yet, Mr. Brown's counsel nevertheless contend the *Rose* class notice -- which *Rose* class counsel, that is, Mr. Brown's counsel, assisted in preparing and disseminating -- failed to provide sufficient notice to Mr. Brown regarding his rights. [*See* ECF 209 at 6–7; ECF 210 at 6–7; ECF 211 at 7–8]. Counsel presents this argument despite (1) the fact that they were class counsel in *Rose*, and (2) were representing Mr. Brown in the instant action at the time notice in *Rose* was disseminated in August 2024. *Rose et al. v. Sandy et al.*, Civ. Action No. 22-cv-405, ECF 1059-2. This raises the specter that class counsel in *Rose* -- in the course of representing a class member individually -- is collaterally attacking a class settlement for which they vigorously advocated and, frankly, designed.  This is troubling for a variety of reasons, not the least of which is found in Rule

23(g)(4): "Class counsel must fairly and adequately represent the interests of the class." Fed. R.

Civ. P. 23(g)(4). The advisory committee notes are worth quoting:

> Paragraph (1) sets out the basic requirement that class counsel be appointed if a class is certified and articulates the obligation of class counsel to represent the interests of the class, *as opposed to the potentially conflicting interests of individual class members*. It also sets out the factors the court should consider in assessing proposed class counsel.
>
>  . . .
>
> Paragraph 1(B) recognizes that the primary responsibility of class counsel, resulting from appointment as class counsel, is to represent the best interests of the class. The rule thus establishes the obligation of class counsel, an obligation that may be different from the customary obligations of counsel to individual clients. *Appointment as class counsel means that the primary obligation of counsel is to the class rather than to any individual members of it*.

Fed. R. Civ. P. 23 advisory committee's note to 2003 amendment; *see generally* Bruce A. Green

and Andrew Kent, *May Class Counsel Also Represent Lead Plaintiffs?*, 72 Fla. L. Rev.

1083 (2020); Nancy J. Moore, *Ethical Duties of Class Counsel Also Representing Class*

*Representatives*, 72 Fla. L. Rev. Forum 160 (2022).

       Inasmuch as Judgment is being entered today adverse to Mr. Brown and no negative

consequences are visited upon the settlement class, the Court does not further address the matter.

The concerns expressed are sufficiently worrisome, however, that they warrant a referral to the

Office of Disciplinary Counsel, which will be notified of the Court's apprehensions. Nor does the

Court further address Defendant Carter's identified conflict inasmuch as the matter would be more

appropriately addressed by the Office of Disciplinary Counsel.

## IV.

       Based upon the foregoing discussion, and having considered the entirety of the

record, the Court **ORDERS** as follows:

1.  That Defendant Carter's, Williams's, and Richmond's Motions for Summary Judgment are **GRANTED** [**ECF 200**; **ECF 202**; **ECF 204**];

2.  That Mr. Brown's Motion for Partial Summary Judgment is **DENIED** [**ECF 206**];

3.  That Mr. Francis's Motion to Dismiss is **DENIED AS MOOT** [**ECF 161**];

4.  That Defendant Carter's, Williams's, and Richmond's Motions to Dismiss are **DENIED AS MOOT** [**ECF 169; ECF 167; ECF 165**];

5.  That Defendant Carter's Motion to Vacate the Court's scheduling order is **DENIED AS MOOT** [**ECF 180**];

6.  That Defendant Carter's Motions *in Limine* are **DENIED AS MOOT** [**ECF 181; ECF 182; ECF 183**]; and,

7.  That Mr. Brown's Motions *in Limine* are **DENIED AS MOOT** [**ECF 184; ECF 217**].

        The Clerk is **DIRECTED** to transmit a copy of this written opinion and order to Rachael L. Fletcher Cipoletti, Chief Lawyer Disciplinary Counsel (rfcipoletti@wvodc.org), all counsel of record, and to any unrepresented party.

        ENTER:  March 9, 2026

Frank W. Volk
Chief United States District Judge